# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

SHERNITA JONES                                                                    PLAINTIFF

V.                                                                          NO. 3:03CV147-M-A

WILLIAMS SONOMA, INC.                                                             DEFENDANT

## ORDER

This cause comes before the court on the motion of defendant Williams Sonoma, Inc., for summary judgment pursuant to Fed. R. Civ. P. 56. Plaintiff Shernita Jones has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion should be granted in part and denied in part.

This is a race discrimination and retaliation action arising out of plaintiff's termination from defendant's employment in the fall of 2001. Williams Sonoma is a specialty retailer of home furnishings, and, in December 1999, it hired plaintiff to work as a Debit Memo Clerk in the accounting department of its Olive Branch, Mississippi facility. More specifically, plaintiff worked in the Furniture Returns Group of the Inventory Accounting department, and plaintiff occupied the sole Furniture Debit Memo position in that department. Plaintiff alleges that, shortly after beginning her employment, she "began to experience the harassment and different treatment for which this instant suit is concerned." Among other allegations, plaintiff submits that she "was subjected to write-ups and disciplinary actions while her white co-workers were not."

In an e-mail dated September 19, 2001, Plaintiff informed Williams Sonoma Human Resources Director Craig Connors of her view that her poor performance evaluations were based upon her race. In October, 2001 plaintiff was notified that her position was being eliminated due to

a restructuring within the company and that she would have until December 10, 2001 to find a new position with the company. Plaintiff alleges that, after she received notice that her position was being phased out, she attempted to find other positions within the company. However, she alleges that she was denied access to other jobs in retaliation for having filed a complaint of discrimination in this case.

Feeling aggrieved, plaintiff filed a charge of discrimination and retaliation with the EEOC on January 4, 2002. On or about May 23, 2003, the EEOC issued a Notice of Right to Sue letter which informed plaintiff that the "EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief to you." On November 26, 2003, plaintiff filed a complaint in this court alleging violations of Title VII of the Civil Right Act of 1964, 42 U.S.C. 2000e, *et seq.*[1] On September 16, 2005, defendant filed the motion for summary judgment which is presently before the court. In seeking summary judgment, defendant argues that no genuine issue of material fact exists regarding plaintiff's right to recover under any of the legal theories set forth in her complaint.

In the court's view, plaintiff has (narrowly) succeeded in establishing fact issues regarding whether she was terminated in retaliation for engaging in a protected activity. To establish a *prima facie* case of a Title VII retaliation claim, a plaintiff must show the following: (1) she engaged in protected activity; (2) there was an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Ackel v. National Communications, Inc.,* 339 F.3d 376

---

[1] Plaintiff also asserted an Equal Pay Act claim which was later dismissed. Plaintiff initially proceeded *pro se* but obtained Kelsey Rushing as counsel on November 15, 2004.

(5th Cir. 2003). As noted previously, plaintiff has presented evidence that, on September 19, 2001, she sent an e-mail to human resources director Craig Connors in which she complained that she had been receiving unduly negative performance evaluations based upon her race. The court concludes that this is a protected activity, and there is little doubt that plaintiff suffered an adverse employment action shortly after engaging in this protected activity. On October 9, 2001, plaintiff was informed by manager Dan Gaw that, due to the closure of the Effingham furniture returns facility and the preparation of a new Shelby Drive facility to handle furniture returns, her job as Furniture Returns Debit Memo Associate was no longer needed. Gaw further told plaintiff that her job would be phased out and that she must find another position with the company by December 10, 2001, or else she would be terminated.

In order to establish a causal connection between the exercise of a protected right and alleged retaliation, a plaintiff must only show "some evidence" between the protected activity and the adverse action. *Cristia v. Sys. Eng'g & Sec., Inc.,* 2004 U.S. Dist. LEXIS 15970, 10 Wage & Hour Case.2d (BNA) 973 (E.D. La. 2004). Temporal proximity may be evidence of a casual connection between the protected activity and the adverse action, and the U.S. Supreme Court has held that temporal proximity alone may be sufficient to prove casual connection if the time period is "very close." *Clark County School District v. Breeden,* 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001). The time period sufficient as "very close" varies, but courts have often found periods of two months to be sufficient to establish casual connection without other evidence. *See, e.g. Kimble v. Ga. Pac. Corp.,* 245 F. Supp. 2d 862 (M.D .La. 2002); *Washington v. Town of Gramercy,* 2004 U.S. Dist. LEXIS 345 (E.D. La. 2004).

In this case, plaintiff was notified that her job would be eliminated less than a month after

she complained of having suffered racial discrimination, and the court concludes that this evidence, standing alone, establishes a sufficiently close temporal proximity to create fact issues regarding causation in this case. In addition, plaintiff testified in her deposition that, soon after she made her complaint of discrimination, an associate of hers gave her a verbal warning that "Shernita, I don't know what you just did, but they just asked me to watch you." Although the court makes no final conclusions in this regard, it *appears* that this statement would qualify as an admission by a party opponent for the purposes of the hearsay rule.[2] In addition, as discussed in more detail *infra*, plaintiff has presented declarations from two co-workers of hers which tend to support her assertion that there was a causal link between her having engaged in a protected activity and her subsequent termination. The court therefore concludes that plaintiff has succeeded in establishing a *prima facie* case of retaliation, and the court must proceed to the next stage of the *McDonnel Douglas* analysis.

If a plaintiff is successful in establishing a *prima facie* case of retaliation, then the burden shifts to the defendant to produce a legitimate, non-retaliatory justification for its actions. If the defendant can articulate a reason that, if believed, would support a finding that the action was non-retaliatory, then the inference of retaliation created by the plaintiff's *prima facie* case disappears and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed.

---

[2]While her lack of detailed memory in this regard is perhaps understandable, plaintiff's testimony on this issue was not as specific as one might hope for. Plaintiff testified that she believed that the employee who made this statement was named "Tony," but that she could gain more certainty in this regard if she were presented with a list of the employees, many of whose names she had forgotten by the time of her deposition. It would assist plaintiff's proof in this regard if she were to gain certainty in this regard, and the court does not pre-judge the admissibility of this alleged statement at this time.

2d 407 (1993). If, however, a plaintiff is able to demonstrate that an employer's stated reasons for terminating her were false or otherwise pretextual, then a jury may find that retaliation was the true reason for the plaintiffs' termination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134, 120 S. Ct. 2097, 2101, 147 L. Ed. 2 105 (2000).[3]

In this case, defendant submits that plaintiff's job was eliminated due to a major operations restructuring and that she was terminated due to her "failing in 71 days to bid on defendant's open jobs for which she was qualified." Specifically, defendant argues as follows:

> In the spring of 2001, defendant decided to bring its only outsourced return operation in house: the furniture returns. All other returns had been handled in-house since the company began. To defendant, it made no sense to continue to outsource only the furniture returns, especially since they were not being handled efficiently or cost-effectively. This restructure would require all returns to be sent to a company-owned

---

[3]In addition to the above well-established case law, it appears (but is not certain) that retaliation plaintiffs in the Fifth Circuit may also proceed under a "mixed-motive" theory in retaliation cases based upon circumstantial evidence. Indeed, in *Rachid v. Jack in the Box,* 376 F.3d 305, 312 (5th Cir. 2004), the Fifth Circuit recently interpreted the U.S. Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), as requiring the adoption of a "modified *McDonnell Douglas* approach" as to the remaining "pretext" factors of the standard in ADEA cases. This court has previously concluded, in another case, that the Fifth Circuit would apply this modified *McDonald-Douglas* standard to retaliation claims as well. *See Warren v. Terex Corporation,* 328 F. Supp. d 641, 646 (N.D. Miss. 2004). While the Fifth Circuit has explicitly reserved judgment as to whether the *Rachid* holding applies to retaliation claims, *see Septimus v. University of Houston,* 399 F.3d 601, 607 n. 7 (5th Cir.2005), other district courts in this circuit have expressed agreement with this court's approach in *Warren. See Bergen v. Continental Casualty Company,* 368 F.Supp.2d 567, 572-73 (N.D.Tex.2005); *Cones v. Duke Energy Corporation,* 367 F.Supp.2d 1092, 1100 (S.D.Tex.2005); *Knighten v. State Fair of Louisiana,* No. 5:03-CV-01930, 2005 WL 1629933, at *4 (W.D. La. July 1, 2005). The court will therefore assume that plaintiff has the option of proving her retaliation case under a "mixed-motive" theory in this case, but the court concludes that resort to such is not necessary for plaintiff to survive defendant's motion for summary judgment. In the court's view, plaintiff has submitted evidence which could lead a reasonable trier of fact to conclude that defendant's stated reasons for not re-hiring plaintiff were false or otherwise pretextual and that resort to a mixed-motive analysis is not necessary, at the summary judgment stage.

warehouse in Memphis, Tennessee, rather than tho the third-party facility in Effingham, Illinois.

In the court's view, defendant's proffered reason for the elimination of plaintiff's job is persuasive, and it does appear that plaintiff's position was eliminated, at least in part, due to legitimate business concerns of defendant which are unrelated to retaliation and/or discrimination against plaintiff. However, defendant also asserts that plaintiff was terminated due to her not having bid on open positions and that she was unqualified for the position which she did formally seek.[4] Plaintiff strongly disputes this portion of defendant's stated non-retaliatory justification for not re-hiring her.

In the court's view, plaintiff has succeeded in raising doubt as to whether defendant actually gave her fair notice of all openings and an opportunity to apply for them. In particular, the court would note the sworn statement provided by plaintiff's former co-worker Debbie Naylor to the EEOC, as part of its investigation into plaintiff's claim of discrimination and retaliation. In this statement, Naylor noted that, after plaintiff's position was eliminated, plaintiff was given 90 days to find another position with the company.[5] Naylor stated that:

> Dan decided to dissolve Shernita's position, and give her 90 days to find another position with the company. During this time period, the accounting department had several temporary employees working at that location. The Human Resources department explained to Dan that the "temps" would all have to be gone before the 90 days were up, or else Shernita would have ample justification that there were positions in the department that she could fill. The temps were told that their assignments were over and asked to leave. However, JoAnn Sipes, a temp that has been assigned to me for several months continued to work, but to conceal this from

---

[4]Several of these openings, such as Caterpillar Lift Driver, were for warehouse positions as to which plaintiff testified she did not feel qualified.

[5]The deadline for plaintiff to find another position with defendant was extended, at some point, from December 10 to December 21.

6

> the accounting population, was moved to another building. This was to imply that all temporary personnel had been dismissed and that the company was not able to offer Shernita a permanent position. When Shernita's 90 days were up, and she was no longer able to apply for an open position within the department, JoAnn was brought back to the 8005 Polk Lane building.

Defendant does not attempt to rebut any of the factual assertions in this portion of Naylor's affidavit, instead relying upon arguments that this affidavit is based upon hearsay and set forth assertions as to which Naylor had no personal knowledge.

As to the hearsay argument, the court would note that most of the statements in Naylor's sworn affidavit involve statements allegedly made by Williams Sonoma managers in the course and scope of their duties. These statements would appear to constitute non-hearsay admissions by a party opponent.[6] As to the lack of personal knowledge argument, Naylor prefaced her four paragraph statement (only one of which is quoted above) by stating that she "witnessed several suspicious practices that, when put together, seemed like a campaign of prejudice against a single employee." Naylor thus swore that she personally witnessed the "suspicious practices in question" and, as a Williams Sonoma employee at the time, it does not strike this court as unreasonable that she would have been in a position to do so. Indeed, Naylor noted in her affidavit that JoAnne Sipes was a "temp that had been assigned to me" and Naylor clearly should have been in a position to observe Sipes' allegedly being moved back and forth to different facilities, allegedly so that plaintiff would not realize that there were available positions which she could fill. Thus, this portion of Naylor's declaration clearly appears to be based upon her personal knowledge. The court would also note that plaintiff testified in her deposition that Naylor was a "supervisor" at Williams Sonoma, and the fact

---

[6]In addition, it is apparent that some of the alleged statements involve commands or other "verbal acts" which are not considered assertions of fact within the meaning of the hearsay rule.

7

that Naylor was apparently in a position of some responsibility tends to increase the likelihood that she would have been privy to directives from management regarding plaintiff.

While defendant chose to submit affidavits rebutting certain other portions of Naylor's declaration, it submitted no evidence contesting either the fact that Sipes was transferred back and forth to various locations, nor has it submitted evidence or even arguments disputing Naylor's interpretation of defendant's reasons for doing so. It may be argued that a comparison of temporary to permanent workers is inapposite, but plaintiff alleges that "Human Resources told me that I would not be laid off if there is another temps [sic] in the inventory accounting department." Accordingly, while the inter-relationship of temporary to permanent workers at Williams Sonoma is not entirely clear from the record, the summary judgment evidence at least establishes fact issues in this regard. Like defendant, this court is interested in ascertaining exactly how Naylor learned of the alleged statement from the Human Resources Department to Dan Gaw to the effect that "the temps would all have to be gone before the 90 days were up, or else Shernita would have ample justification that there were positions in the department that she could fill." This statement, if based upon personal knowledge, would arguably constitute plaintiff's strongest evidence that Williams Sonoma did not give her a fair opportunity to apply for new positions with the company and that it was, indeed, actively seeking to conceal the existence of available positions by elaborate deception.[7]

---

[7]This would not necessarily mean that defendant retaliated and/or discriminated against plaintiff, but it would, in the court's view, reasonably allow a jury to conclude that defendant's alleged non-retaliatory justification for firing her was false and pretextual. The Supreme Court has held such evidence sufficient to thus permit a jury to infer that retaliation took place. *See, e.g. Reeves*, 530 U.S. at 134. At this stage in the litigation, this court is concerned with whether plaintiff should be given an *opportunity* to present her claims to the jury, and Naylor's sworn statement does appear to create jury issues regarding the truthfulness of defendant's alleged non-retaliatory reason for terminating her.

Naylor's declaration is arguably consistent with plaintiff's deposition testimony that her former co-worker (who she believed was named "Tony") warned her repeatedly "throughout the time when he was working ... that, Shernita, I don't know what you've done, but they are watching you, they've got their eyes on you." In addition, plaintiff testified that manager Gaw became angry upon learning that she had filed a complaint with Human Resources:

> The time that I made my complaint to Williams-Sonoma - I mean to Human Resources - and I had a meeting with Dan Gaw, Dan Gaw called me into his office and he asked me, who did I think I was, that I was - I was nobody.

In her declaration, Naylor singled out Gaw as the driving force behind the retaliation and/or discrimination allegedly suffered by plaintiff, and Naylor's declaration appears to correspond to plaintiff's deposition testimony in this regard.

While Naylor's declaration and plaintiff's deposition testimony were, in many instances, not as specific as might be hoped, they each suggest that plaintiff might be able to persuade a reasonable juror that she was not given a fair opportunity to secure re-employment with defendant and that the reason for such was retaliation. While the record does not reveal exactly how Naylor gained knowledge of the alleged directive from Human Resources to Dan Gaw, the court is unwilling to declare, by judicial fiat, that Naylor had no such personal knowledge in this regard when she represented that she "witnessed" the practices set forth in her statement, and defendant submitted no evidence of its own on this issue. Moreover, Naylor claims to have personally witnessed a temporary employee under her supervision being transferred back-and-forth to different facilities, and this statement arguably has probative value in this regard, independent of how she learned of the alleged directive from Human Resources to Gaw.

The court's conclusion that triable jury issues exist herein is also supported by a multi-page written statement submitted to the EEOC by Angela Smith, another African-American former co-worker of plaintiff's. Much of Smith's declaration, like Naylor's, relates to her contention that Williams Sonoma, and particularly Gaw, treated African-American employees at the Olive Branch facility in a discriminatory manner. Smith does briefly note her view that plaintiff was fired in retaliation for "rocking the boat," asserting as follows:

> [Plaintiff] was afraid to go to the restroom because she knew they were watching and harassing her. They wanted her to be quiet and not "rock the boat." When she didn't stop complaining they decided to phase her job out. They've trained and relocated white people when their job were [sic] being phased out but did not let her do it.

As with Naylor's declaration, defendant relies upon arguments that this declaration is based upon hearsay and speculation. In addition, defendant notes that, while Smith signed an EEOC form in which she "certif[ied] that the above statements are true and correct," this statement did not include the words "under penalty of perjury."

The court has before it three ex-employees of the Williams Sonoma's Olive Branch facility who have submitted declarations that plaintiff (as well as other African-American employees) suffered retaliation and discrimination at the Olive Branch facility. In response, defendant relies primarily upon rather technical (and in many respects meritless) evidentiary and procedural arguments which the court finds unavailing, particularly considering the seriousness of the issues involved. While defendant is correct that Smith's declaration does not include the words "under penalty of perjury," it is apparent that she merely used the form which the EEOC provided her. Smith "certified" that the statements were true and correct, and she provided her declaration in the context of a formal EEOC investigation, which is clearly a serious matter.

Smith, like Naylor, actually worked at defendant's Olive Branch facility, and the court is not prepared to dismiss her lengthy statement regarding events at the facility where she worked as being mere speculation. Smith's declaration is not necessary to support the court's finding that jury issues exist regarding plaintiff's retaliation claim, but it does constitute cumulative evidence in support of this conclusion. In addition, while this court is not bound by the EEOC's finding that there is "reasonable cause to believe that violations of the statute(s) occurred," its finding in this regard strengthens this court's conclusion that plaintiff should be given an opportunity to present her retaliation claims to a jury. Finally, while the court concldues that fact issues exist even under a "pretext" analysis, district courts in this circuit have concluded that, in light of *Desert/Palace Rachid*, plaintiffs may seek to circumstantially prove a "mixed motive" theory in retaliation cases. *See Bergen,* 368 F.Supp.2d at 572-73. In the court's view, the aforementioned evidence clearly suffices to create fact issues as to whether retaliation was one factor motivating the adverse employment action suffered by plaintiff in this case. Triable jury issues exist regarding plaintiff's retaliation claims, and the motion for summary judgment will therefore be denied as to this claim.

The court also has before it race discrimination claims filed by plaintiff. Plaintiff's deposition as well as the declarations of Smith and Naylor set forth numerous rather small incidents of disparate treatment allegedly suffered by plaintiff in this case. Some of these alleged incidents involve rather minor allegations that plaintiff was not given certain "perks" that certain other employees were given, while others involve more serious allegations that plaintiff was not given an opportunity to succeed in her job. The court is cognizant that, post-*Desert Palace*, a Title VII race discrimination plaintiff need only circumstantially prove that race discrimination was *one factor*,

11

among others, which motivated an adverse employment action which she received.[8] As noted previously, most courts have concluded that this is the case with retaliation claims as well, but this is clearly the law as it relates to race discrimination claims.

It is, without question, much easier for a race discrimination plaintiff to carry her burden of production so as to survive summary judgment post-*Desert Palace* than it was previously. The court accordingly declines to grant summary judgment as to plaintiff's race discrimination claims at this juncture, but it should be noted that the court will have the opportunity to evaluate which specific claims, if any, should go before the jury after the presentation of the evidence at trial. The court does agree with defendant, however, that plaintiff has failed to establish genuine issues of fact regarding the "failure to promote" aspects of her discrimination claim, and, at any rate, such a claim was not raised in the complaint. This claim accordingly fails due both to lack of proof and due to the fact that plaintiff failed to raise it in a timely manner.

While the court concludes that triable jury issues exist with regard to plaintiff's retaliation and discrimination claims, it remains unclear whether plaintiff will actually be able to present truly strong evidence of retaliation and/or discrimination at trial. Indeed, the court notes from the pretrial order that Debbie Naylor lives in California and is listed as a "may call" witness. Angela Smith is similarly listed as a "may call" witness, although she lives considerably closer to this court- in Memphis. Plaintiff has managed to present sufficient summary judgment evidence *suggesting* that

---

[8]Assuming plaintiff proves her mixed-motive case, defendant will have the opportunity to limit plaintiff's damages by proving that it would have taken the same employment decision regardless. However, proving that race discrimination was one motivating factor for the decision entitles the plaintiff to attorneys' fees, regardless of the applicability of the "same decision" defense.

she may be able to prove intentional retaliation and/or discrimination in this case, but she will soon be required to actually deliver upon this promise, and she will not be able to rely upon the EEOC submissions of Smith and Naylor in doing so. Assuming that these witnesses are called, defendant will have an opportunity to thoroughly cross-examine them in order to ascertain whether their testimony is based upon speculation or otherwise inadmissible evidence.

The court would also emphasize that Sherlita Jones, rather than Smith or Naylor, is the plaintiff in this action. It does not *appear* at this juncture that plaintiff has sufficient proof of severe and pervasive discrimination to establish a hostile work environment claim,[9] and the sole adverse employment action suffered by plaintiff would appear to arise from defendant's failure to re-hire her after her position was terminated. In order to survive a motion for directed verdict, plaintiff should present testimony at trial which would permit a reasonable juror to conclude that she was unable to secure a position in the fall of 2001, at least partly due to retaliation and/or discrimination. The rules of procedure permit a plaintiff to create triable fact issues for summary judgment purposes by using sworn statements such as Naylor's declaration to the EEOC, and these statements are not subject to cross-examination. Such will obviously not be the case at trial, however, and the court accordingly suggests that plaintiff take a realistic look at whether her summary judgment evidence will be able to withstand trial scrutiny before electing to proceed to trial. At this juncture, however, the court concludes that plaintiff has succeeded, albeit narrowly, in establishing triable jury issues in this regard, and the motion for summary judgment will therefore be denied as to plaintiff's retaliation and

---

[9]In her deposition, plaintiff had some difficulty in listing any acts of "harassment" which she suffered at the hands of defendant, and the events which she did mention did not appear to rise to the level of a hostile work environment claim. The court will consider any proof suggesting otherwise at trial, however.

race discrimination claims.

In light of the foregoing, it is ORDERED that defendant's motion for summary judgment **[34-1]** is granted as to any "failure to promote" claims asserted by plaintiff, but is denied as to plaintiff's retaliation and discrimination claims. Defendant's motion in limine **[46-1]** to exclude the use at trial of Smith and Naylor's declarations is granted.[10]

This, the 5th day of December, 2005.

                                          **/s/ Michael P. Mills**
                                          **UNITED STATES DISTRICT JUDGE**

---

[10] While the court has considered these declarations as summary judgment evidence, defendant is correct that plaintiff may not use them as substantive evidence in lieu of actual testimony at trial.